* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rideout. The appealing parties have not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. At such time, an employment relationship existed between the employee-plaintiff and the defendant-employer.
3. Specialty Risk Services is the carrier on the risk.
4. The average weekly wage is in dispute.
5. The following medical records have been marked as Stipulated Exhibit #2 and have been received into evidence:
 a. Medical records of Scotland Memorial Hospital dated November 9, 2003.
 b. Medical records of Scotland Memorial Hospital Occupational Health. *Page 3 
 c. Medical records of Dr. Indira Gatiwala.
 d. Medical records of Dr. Charles Haworth.
 e. Medical records of Pinehurst Neurology.
 f. Medical records of Chiropractor Kevin Smith.
 g. Medical records of Robeson Family Practice.
 h. Medical records of Southeastern Regional Medical Center dated October 7, 2004.
 i. Medical records of Southeastern Regional Medical Center dated September 27, 2004.
 j. Medical records of Pinehurst Surgical Clinic consisting of 25 pages.
 k. Medical records of Scotland Memorial Hospital dated July 13, 2000.
 l. Medical records of Scotland Orthopedic Clinic.
6. A videotape depicting plaintiff's appearance at his daughter's wedding has been marked as Stipulated Exhibit "3" and has been received into evidence.
7. A document showing short-term disability payments received by the plaintiff has been marked as Stipulated Exhibit "4" and has been received into evidence.
8. An additional fifty (50) pages of medical records from Scotland Memorial Hospital and Scotland Occupational Health.
9. The following depositions are received into evidence:
 a. Physician's Assistant, Andrea Burns,
 b. Chiropractor Kevin Smith,
 c. Dr. James R. Staton,
 d. Dr. Charles Haworth, with attached Deposition Exhibit No. "1", *Page 4 
 e. Dr. Rakesh P. Chokshi.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 48 year-old high school graduate. Plaintiff began working at LOF (now known as Pilkington North America) during the summer following his completion of the ninth grade. Upon graduation in June of 1976, plaintiff was hired by LOF for full-time employment.
2. At the time of the alleged injury, plaintiff worked defendant's swing shift, working three days and then off two to three days and resuming work over the weekends. Plaintiff worked forty hours per week, earning approximately $ 732.00 a week, yielding a compensation rate of $ 488.02 a week.
3. On June 12, 2000, plaintiff sustained an injury to his lower back while employed with the defendant. Plaintiff also experienced pain running down his left leg to his left foot and ankle. Plaintiff also experienced numbness. Plaintiff was treated at Scotland Memorial Hospital and Scotland Orthopedic Clinic and was diagnosed with foot drop. Plaintiff missed no time from work as a result of this injury and defendants paid for his medical treatment. Plaintiff was placed on restrictions and returned to work to perform the duties of his employment with defendant within his restrictions. Plaintiff's foot drop completely resolved and plaintiff was pain free at the time of his release by his treating physicians. The Full Commission finds that this prior injury was work-related. *Page 5 
4. On May 5, 2002, plaintiff was shoveling glass while employed with the defendant when he felt a pop in his back. Plaintiff described a sharp pain down the left side of his body. Plaintiff was again treated at Scotland Memorial Hospital Occupational Health and Chiropractor Smith. Plaintiff lost no time from work as a result of this work-related accident but was placed on light duty for six weeks. Defendant accommodated plaintiff's restrictions when he returned to work. Plaintiff described his condition as pain-free when released by his treating physicians. Plaintiff did not suffer foot drop as a result of this accident. The Full Commission finds that this prior injury was work-related.
5. As a result of the May 5, 2002 accident, plaintiff underwent an MRI of the lumbar spine on June 6, 2002. The MRI was interpreted as showing degenerative changes of the disk at L5-S1 and mild early degenerative changes of the disk at L4-L5. The L4-L5 disk was not protruding or bulging.
6. On February 25, 2003, plaintiff was lifting his grandchild at home when he felt a pop in his back. Plaintiff sought treatment with Chiropractor Kevin Smith and following a course of chiropractic treatment, plaintiff described his pain as subsiding.
7. Between July 12, 2000 and November 9, 2003, plaintiff suffered no other injuries to his back or left ankle/foot.
8. On November 9, 2003, plaintiff was performing the duties of his employment with the defendant when he stepped down from a three-foot high platform with his left foot onto a rubber mat covering conduit pipes and lost his balance. Plaintiff testified at the hearing before the Deputy Commissioner that as he was stepping down, he lost his balance and begin to fall to the left. Plaintiff further testified that he caught himself before he hit the concrete. Plaintiff testified that as he got up, he felt sharp pain running down his left leg. *Page 6 
9. Plaintiff informed his coordinator, Tim Rebbels, that his left leg hurt. Mr. Rebbels called his supervisor and instructed the plaintiff to go to the nursing station. Plaintiff testified at the hearing before the Deputy Commissioner that upon his arrival at the nursing station, "Jeanette," who placed ice on his ankle, saw him. Plaintiff informed Jeanette and Mr. Rebbels that he was unable to feel the ice on his ankle and could not move his foot up and down. Plaintiff then spoke with "Mickey," the weekend supervisor, who advised plaintiff to go to the emergency room. Plaintiff testified during cross-examination at the hearing before the Deputy Commissioner that he had informed the doctor that he could not move his left foot up or down and that he had pain running down his left leg, but the doctor failed to record that symptom and simply diagnosed him with a sprained ankle.
10. On November 9, 2003, plaintiff was seen at Scotland Memorial Hospital for complaints of left ankle and dorsal foot pain. Plaintiff was placed in an ace bandage and removed from work for two days. Plaintiff was also seen at Scotland Memorial Hospital Occupational Health Services on the same day, where he was diagnosed with an ankle sprain and prescribed an ankle splint. Plaintiff was not given any work restrictions following this appointment.
11. Plaintiff reported to work on November 10, 2003 on crutches, where he was asked to answer the telephone. Plaintiff performed telephone duties the following night as well. Plaintiff continued working on and off until November 23, 2003, at which time he was removed from work.
12. On December 23, 2003, plaintiff presented to Dr. Indra S. Gatiwala, a neurologist. Dr. Gatiwala opined that the plaintiff had suffered from left lower extremity weakness, especially left foot drop with impairment of dorsiflexion and dorsiextension and hypoeshtesia of *Page 7 
unclear etiology. Plaintiff was referred for an EMG, which ultimately revealed no clear evidence of left peroneal or posterior tibial or peripheral sensory motor neuropathy. Plaintiff also underwent an MRI of the lumbar spine, which revealed a minimal disc bulge at the L5-S1 level of uncertain clinical significance and a lateral disc protrusion at the L4-5 level impinging on the left exiting nerve. The Full Commission finds the results of this MRI to be different from those results of plaintiff's June 6, 2002 MRI.
13. Plaintiff returned to Dr. Gatiwala on January 13, 2004. Dr. Gatiwala could not determine if the plaintiff's current condition was due to the injury at work. Dr. Gatiwala's notes state: "it is difficult to say for me [to say] that it is coming from the injury at work, because of the kind of history and clinical presentation. He also had similar problems in October 2000, and at that time had had slightly abnormal EMG. He claimed that he was completely back to normal. It is very difficult for me to prove that it is an ongoing problem or it is some new problem." Dr. Gatiwala referred plaintiff to Dr. Charles Haworth, a neurosurgeon.
14. Plaintiff presented to Dr. Haworth on January 15, 2004. After reviewing the tests and examining the plaintiff, Dr. Haworth stated that plaintiff "could possibly have a little bit of compression" in the left L4 nerve root, but opined that the plaintiff was "either malingering or had a hysterical conversion reaction" to his injury.
15. Plaintiff continued to experience low back pain and left leg weakness and pain and on January 16, 2004, plaintiff presented to Dr. Kevin Smith, a chiropractor. Plaintiff reported these symptoms to Dr. Smith who treated plaintiff until February 9, 2004.
16. Plaintiff's low back and left leg pain persisted and he presented to Pinehurst Surgical Clinic on March 1, 2004 for low back and leg pain. Plaintiff was referred to Dr. Frank Corrigan for a nerve root injection. Plaintiff returned on April 2, 2004, at which time he was *Page 8 
referred to a neurosurgeon, Dr. Henry Moyle. Dr. Moyle recommended root sleeve injections but did not recommend surgery.
17. On December 22, 2004, plaintiff returned to Pinehurst Surgical Clinic at which time he was issued work restrictions of light duty, mostly sedentary work.
18. On March 9, 2005, Dr. Ward Oakley at Pinehurst Surgical Clinic released plaintiff to regular, full duty work at his request in order to avoid being terminated from his job.
19. On April 11, 2005, Dr. James R. Staten examined the plaintiff. Dr. Staten testified that when he examined the plaintiff, he did not see "much evidence" of a foot drop or neurologic deficit in the lower extremities. Dr. Staten also testified that he did not impose any work restrictions on the plaintiff with regard to his feet or ankle, and that he did not impose any work restrictions on the plaintiff with regard to his lower back, except that he should not be shoveling glass. Dr. Staten did not have an opinion as to whether the plaintiff's foot or low back problems were related to a work injury.
20. On April 22, 2005, plaintiff was examined by Dr. Rakesh P. Chokshi, an orthopaedic surgeon, for ongoing back pain and left leg pain. Following the physical examination of the plaintiff, Dr. Chokshi diagnosed the plaintiff with low back pain and left-sided radicular symptoms, a far lateral disc herniation at L4-5 and a left foot drop. Dr. Chokshi testified that plaintiff asked him to release him to return to work, which Dr. Chokshi did on April 22, 2005.
21. Dr. Chokshi opined that it was more likely than not that the plaintiff's November 9, 2003 accident either resulted in the plaintiff's current condition or materially aggravated a pre-existing condition. Dr. Chokshi further opined that the plaintiff's foot drop would not have reoccurred spontaneously. *Page 9 
22. The Full Commission gives greater weight to the opinion of Dr. Chokshi, an orthopaedic surgeon, over the opinions of Drs. Gatiwala and Haworth, who are neurosurgeons.
23. The competent evidence of record establishes that on November 9, 2003, as plaintiff stepped down from of a three-foot high platform with his left foot onto a rubber mat covering conduit pipes, he lost his balance and began to fall to his left side, feeling immediate pain running down his left leg that resulting in plaintiff's back, left leg and left foot condition or materially aggravated his preexisting condition.
24. The Full Commission finds that the plaintiff was disabled and unable to earn wages due to his compensable injury by accident to his back and left foot from November 26, 2003 to April 25, 2005.
25. On or about April 25, 2005, plaintiff returned to work with the defendant earning the same or greater average weekly wage as he had earned prior to the November 9, 2003 injury by accident.
26. Plaintiff received benefits via employer's self-fund disability plan.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of employment with the defendant to his back and left leg and left foot on November 9, 2003. N.C. Gen. Stat. § 97-2 (6)
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $ 488.02 per week from November 26, 2003 to April 25, 2005. N.C. Gen. Stat. § 97-29. *Page 10 
3. Plaintiff is entitled to have defendants provide all medical expenses incurred or to be incurred as a result of his compensable injuries as may be reasonably required to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Defendants are entitled to a credit against compensation due plaintiff equal to the payments previously made to plaintiff for the period of November 26, 2003 to April 25, 2005. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 A W A R D
1. Subject to the attorney's fee hereinafter approved, defendants shall pay temporary total disability compensation to the plaintiff at a rate of $ 488.02 a week from November 26, 2003 to April 25, 2005. The amounts due plaintiff that have accrued shall be paid to plaintiff in a lump sum.
2. Plaintiff is entitled to have defendants provide all medical expenses incurred or to be incurred as a result of his compensable injuries as may be reasonably required to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. An attorney's fee in the amount of 25% of the recovery is approved for plaintiff's counsel, which will be deducted from the award and paid directly to plaintiff's attorney.
4. Defendants shall receive a credit for payments paid pursuant to defendant's short-term disability plan.
5. Defendants shall pay the costs. This the ___ day of April 2007. *Page 11 
 S/________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
UNAVAILABLE FOR SIGNATURE:
 THOMAS J. BOLCH *Page 1